NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**IN RE: PAUL MORINVILLE,**
*Appellant*

_____

2018-1895

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 11/003,557.

_____

Decided: April 29, 2019

_____

PAUL MORINVILLE, Highland, IN, pro se.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by JOSEPH MATAL, AMY J. NELSON, PHILIP J. WARRICK.

_____

Before NEWMAN, PLAGER, and MOORE, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Paul Morinville appeals the decision of the Patent Trial and Appeal Board ("PTAB" or "Board"), affirming the rejection of claims 1–16, 18, and 19 (all the remaining claims) of Patent Application No. 11/003,557 ("'557 Application")

on the ground of unpatentability under 35 U.S.C. § 101.[1] On appellate review, we affirm the Board's decision.

BACKGROUND

The '557 Application, entitled "Matrixed Organization Apparatus," describes the invention as systems and methods for managing complex organizations. The Abstract of the Invention states:

> Systems and methods for dynamically and selectively generating a hierarchical functional organization from a hierarchical operating organization structure. In one embodiment, a hierarchical functional structure is generated by first identifying one of the positions in the operating organization structure from which the functional organization will be generated. After the starting position is identified, the positions in the hierarchical operational structure that are subordinate to the first one of the positions and that have roles which have at least one functional level in common with the role of the starting position are identified.

'557 Application, Abstract.

The '557 Application states that its method provides, inter alia, control of access to information when a company reorganizes, merges, divests, adds departments, or otherwise changes its operating structure—so that only authorized employees have access to designated business information. The '557 Application illustrates a hierarchical structure led by a Chief Executive Officer ("CEO"), in Figure 1:

---

[1]     *Ex Parte Paul Morinville*, No. 2016-008102, 2018 WL 1029147 (P.T.A.B. Feb. 22, 2018) ("*Bd. Op.*").



Fig. 1

In accordance with the '557 Application, the system converts the structure in Figure 1 to a hierarchical structure in accordance with function, as shown in Figure 2.



Fig. 2

Performance of the claimed method is outlined in claim 1, which was identified by the Board as representative:

1. A method implemented in a computer for dynamically generating a hierarchical functional structure from a hierarchical operational structure, comprising the steps:

[(a)] providing a hierarchical operational structure of unique positions within an organization;

[(b)] associating one of a plurality of roles with each of the positions, wherein each of the roles has a corresponding major function, and wherein at least a subset of the roles is non-unique;

[(c)] identifying a first one of the positions;

[(d)] identifying positions in the hierarchical operational structure that are subordinate to the first one of the positions and that have roles which have at least one functional level in common with the role of the first one of the positions; and

[(e)] generating a hierarchical functional structure of the identified positions; and

[(f)] controlling user access to business processes based on the hierarchical functional structure;

[(g)] wherein each of the steps is automatically implemented in the computer.

(bracketed letters added by the Board). The Board applied the two-step analytical protocol established in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and found that claim 1 is directed to an abstract idea under 35 U.S.C. § 101, and is not saved by any inventive concept.

DISCUSSION

## Standard of Review

On appellate review, the Board's ruling on whether any claim of an application "is drawn to patent-eligible subject matter under § 101 is an issue of law that we review de novo." *In re Ferguson*, 558 F.3d 1359, 1363 (Fed. Cir. 2009). And, the Board's underlying factual findings are reviewed for support from substantial evidence. *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1048 (Fed. Cir. 2017). Claims in pending applications receive their

broadest reasonable interpretation during examination. *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).

## Section 101

Section 101 defines patent-eligible subject matter, and provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. Judicial precedent has established that eligible subject matter excludes "laws of nature, natural phenomena, and abstract ideas." *Alice*, 573 U.S. at 217.

Application of Section 101 to computer-implemented methods has produced a body of precedent adapted to this technology. The framework for determining whether a particular computer-implemented method is eligible for patenting was formulated in *Alice* as a two-step analysis, whereby it is first determined whether the claimed subject matter is directed to an abstract idea, and if so, it is determined whether the elements of the claim, considered "both individually and as an ordered combination," contain an "inventive concept." *Id.* (internal quotations omitted). The presence of an inventive concept will "'transform the nature of the claim' into a patent-eligible invention." *Id.* (quoting *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 78–79 (2012)).

### 1.  The Abstract Idea: Step One

The first step of the inquiry calls upon the decision-maker to look at "whether the claims at issue are directed to one of th[e] patent-ineligible concepts." *Alice,* 573 U.S. at 217. Applying this inquiry to the Morinville claims, the Board stated:

> The subject matter of claim 1, as reasonably broadly construed, is drawn to a business administration concept for management of a business; that is, claim 1 is focused on a methodology of creating a functional organizational structure from a hierarchical operational structure and controlling access to business processes based on the created functional structure.

*Bd. Op.* at 5–6 (footnote omitted) (citing '557 Application, Spec. ¶¶ 26, 5).

The Board held that the subject matter is directed to the abstract idea of reorganizing an existing organizational structure to restrict/allow access to certain users, citing precedent that fundamental economic and conventional business practices are abstract ideas. Bd. Op. at 5–7 (citing *Accenture Global Servs., GmbH v. Guidewire Software*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (generating task-based rules based on an event); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (tailoring information presented to a user based on specific conditions); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) ( concerning methods of offer-based price optimization in an e-commerce environment); *Versata, Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015) (using organizational and product group hierarchies to determine a price); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017), *cert. denied,* 138 S. Ct. 689 (2018) (providing restricted access to resources)).  The Board concluded:

> We find the concept of organizational structure, in which an organization can be structured in different ways, and managing access to business processes based on an organizational structure, is a well-established business practice, and an idea with no particular concrete or tangible form.  Furthermore, we find the "computer" of claim 1 is

invoked merely as a tool and does not provide any specific improvement in computer capabilities.

*Bd. Op.* at 5–6.

Mr. Morinville argues that his method is not an abstract idea, for it "ensures that access rules between organizations are matched *automatically* when any organization changes its structure," *Appellant's Br.* 12 (emphasis added), whereas in the prior art if an organization changes its structure "the access rules associated with the [prior] organization" structure must be *manually* changed to match the new organization structure, *Appellant's Br.* 11.

However, computer-based efficiency does not save an otherwise abstract method. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277-78 (Fed. Cir. 2012) (performance by computer of operations that previously were performed manually or mentally, albeit less efficiently, does not convert a known abstract idea into eligible subject matter). In *Versata,* this court explained that using organization and group hierarchies in determinations "is an abstract idea that has no particular concrete or tangible form or application. It is a building block, a basic conceptual framework for organizing information, similar to the claims involving collecting, recognizing, and storing data in *Content Extraction* and the claims in *CyberSource."* 793 F.3d at 1333–34.

Mr. Morinville argues that this case is like *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), because his "[c]laims 'are limited to rules with specific characteristics' and 'the computer automation is realized by improving the prior art through the use of rules.'" *Appellant's Br.* 24 (quoting *McRO*, 837 F.3d at 1313). The claims in *McRO*, however, are for a system of lip synchronization and facial expressions of animated characters, and this court concluded that the computerized system in *McRO* operated by rules whose implementation was not previously available manually. 837 F.3d at 1316. In

contrast, when implementation was previously available and was conducted, although without computer assistance, Section 101 may negate eligibility for patenting.

We conclude that the Board correctly viewed claim 1 as directed to the general concept of reorganizing an organization in conformity with function. The Board correctly held that a claim "directed to a business administration concept for management of a business, i.e., a conventional business practice long prevalent in our system of commerce," and recites a computer "merely as a tool," is a general abstract idea. *Bd. Op.* at 6. We affirm the Board's finding that Step One of the *Alice* protocol is met.

### 2. The Inventive Concept: Step Two

Technological features that constitute an inventive concept will render the claim eligible for patenting. *Alice*, 573 U.S. at 221. To constitute an inventive concept, such features must be more than "well-understood, routine, conventional activity." *Mayo*, 566 U.S. at 79. The inquiry is "whether the claims do significantly more than simply describe [an] abstract method." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). The Court has explained that "generic computer implementation" is insufficient to transform an abstract idea into a patent-eligible invention, *Alice*, 573 U.S. at 212, 221, and that "simply appending conventional steps, specified at a high level of generality" to an abstract idea does not make that idea eligible for patenting, *Mayo*, 566 U.S. at 82.

The Board applied Step Two to Mr. Morinville's claims, and concluded that "there is no inventive concept defined by an element or combination of elements in claim 1, which is significantly more than the abstract idea." *Bd. Op.* at 7. The Board found that the '557 Application's method is "an application of a well-known business management concept in a known computing environment," and that the recitation of a generic computer is insufficient to transform the patent-ineligible abstract idea into a patent-eligible

invention. *Bd. Op.* at 7. The Board concluded that the Morinville method "amounts to [no] more than comparing stored and input data and applying business rules." *Bd. Op.* at 8. The Board referred to the Examiner's withdrawal of previous rejections for anticipation and obviousness, and explained that

> [a]lthough the second step in the *Alice* analysis includes a search for an inventive concept, the analysis is not an evaluation of novelty or non-obviousness, but rather, a search for "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"

*Bd. Op.* at 10 (quoting *Alice*, 573 U.S. at 218). The Board stated that, even if the Morinville method were deemed to be novel, this does not establish an inventive concept under Section 101.

Mr. Morinville argues that the Board erred in Step Two. He states that "the inventive concept is automatically generating a dynamic functional organization from an operating organization," as set forth in elements (c),(d), and (e) of claim 1. *Appellant's Br.* 20. He points out that no reference showed this automatic method. *Id.* He stresses that the Examiner and the Board found that the claims of the '557 Application were novel under § 102 and non-obvious under § 103, thus establishing the existence of an "inventive concept." *Id.* at 21.

The PTOF responds that the '557 Application's claim elements are stated to be performed by known computer processes, to perform known steps in restructuring a business organization. *Appellee's Br.* 18. The PTO on this appeal cites precedent holding that it is not "enough for subject-matter eligibility that claimed techniques be novel and non-obvious in light of prior art, passing muster under 35 U.S.C. §§ 102 and 103." *SAP Am., Inc. v. Investpic, LLC,*

898 F.3d 1161, 1163 (Fed. Cir. 2018).  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a *new* abstract idea is still an abstract idea.  The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty."); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016) ("While the claims may not have been anticipated or obvious [from] the prior art . . . that does not suggest that the idea . . . is not abstract, . . . .").

The Board did not err in its application of precedent, ruling that the claimed method is directed to an abstract idea and that the computerized conduct of the method is not an inventive step.  We affirm the ruling that the claims of the '557 Application are directed to ineligible subject matter under Section 101.

**AFFIRMED**