NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**UBISOFT ENTERTAINMENT, S.A., UBISOFT, INC.,**
*Plaintiffs-Appellants*

**v.**

**YOUSICIAN OY,**
*Defendant-Appellee*

---

2019-2399

---

Appeal from the United States District Court for the Eastern District of North Carolina in No. 5:18-cv-00383-FL, Judge Louise Wood Flanagan.

---

Decided: June 11, 2020

---

MICHELLE LYONS MARRIOTT, Erise IP, P.A., Overland Park, KS, for plaintiffs-appellants. Also represented by ERIC ALLAN BURESH.

JONATHAN HANGARTNER, X-Patents, APC, La Jolla, CA, for defendant-appellee. Also represented by AMY ELIZABETH ALLEN HINSON, Parker Poe Adams & Bernstein LLP, Greenville, SC; STEPHEN VINCENT CAREY, CHRISTOPHER THOMAS, Raleigh, NC.

---

Before LOURIE, MAYER, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

This appeal arises from a decision of the District Court for the Eastern District of North Carolina that U.S. Patent No. 9,839,852, titled "Interactive Guitar Game," claims patent-ineligible subject matter. Ubisoft contends that the district court "overgeneralized" the asserted claims and that the claims recite specific improvements in computer capabilities. Because the district court's decision is in tune with our Section 101 jurisprudence, we affirm.

BACKGROUND

Ubisoft Entertainment, S.A. and Ubisoft, Inc. (collectively, "Ubisoft") is one of the largest video game developers in the world. Ubisoft developed and published *Rocksmith*, a computerized instructional guitar game. Yousician Oy ("Yousician") is a Finnish company founded by two friends who developed a digital guitar instruction platform. On August 1, 2018, Ubisoft sued Yousician in the District Court for the Eastern District of North Carolina, alleging infringement of claims 1–4 and 6 ("the asserted claims") of U.S. Patent No. 9,839,852 ("the '852 patent"). On August 9, 2019, the district court granted Yousician's motion to dismiss, concluding that the asserted claims are patent ineligible under 35 U.S.C. § 101. J.A. 13.

The '852 patent is directed to "[a]n interactive game designed for learning to play guitar." '852 patent at Abstract. The '852 patent discloses an invention that improves upon "[c]onventional learning tools and sources for instructional information," such as "music teachers, music books, audio tapes or compact disks (CDs), and video tapes," which are limited "in the quality of instruction or the manner in which the information is presented." '852 patent col. 1 ll. 26–32. Claim 1 of the '852 patent, the only independent claim at issue, recites:

1. A non-transitory computer readable storage medium with a computer program stored thereon, wherein the computer program is operable to present an interactive game for playing a song on a guitar, wherein the computer program instructs one or more processors to perform the steps of:

presenting, on a display device, a plurality of fingering notations corresponding to the song to be played by a user;

receiving, from a guitar input device, an analog or digital audio signal when the guitar is played by the user, wherein the received signal corresponds to the song played by the user;

assessing a performance of the songs played by the user, based on the assessed performance, determining a portion of the performance that should be improved;

based on the assessed performance and the determined portion of the performance that should be improved, selectively changing a difficulty level of at least a portion of the presented plurality of fingering notations corresponding to the song; and generating at least one mini-game different from the game for the song being played targeted to improving the user's skills associated with the performance of the determined portion.

'852 patent col. 20 ll. 21–43.

Claims 2–4 and 6 depend from claim 1. '852 patent col. 20 ll. 44–54, 63–67. Claim 2 recites "selectively changing a difficulty level" by changing the frequency or speed of musical notations. *Id.* Claim 3 recites "selectively changing the difficulty level" in real time, during playing of the song. *Id.* Claim 4 recites a guitar that is "one of an acoustic guitar or an electric guitar." *Id.* Claim 6 recites

"recommending appropriate songs based on a skill level of the user as determined from past performances." *Id.*

In granting Yousician's motion to dismiss, the district court determined that the '852 patent claims patent-ineligible subject matter because claim 1 "is directed toward the abstract idea of teaching guitar by evaluating a user's performance and generating appropriate exercises to improve that performance." J.A. 6. The district court also found that the claims "fail to contain an inventive concept." J.A. 12. The district court found that the "only arguable inventive concept" relates to "changing the difficulty level of a song, in real time, in response to an assessment of the user's performance." J.A. 9. But the court found this concept "vague and lacking innovation," in part because "the claims and specification provide no reference to how [it] is to be accomplished, beyond that which a music teacher can provide." J.A. 9–10.

Ubisoft timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## ANALYSIS

We review a district court's grant of a Rule 12(b)(6) motion under the law of the regional circuit, in this case the Fourth Circuit. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1124 (Fed. Cir. 2018). Applying Fourth Circuit law, we review a district court's dismissal under Rule 12(b)(6) de novo. *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). We accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff, but we "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019).

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement

thereof." The courts have created exceptions to the scope of § 101: "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 573 U.S. 208, 216 (2014). The abstract idea exception embodies "the longstanding rule that an idea of itself is not patentable" and it prevents patenting a result where "it matters not by what process or machinery the result is accomplished." *Id.*; *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 113 (1854).

We apply a two-step framework for analyzing whether a patent claims ineligible subject matter. In step one, we consider the claims "in their entirety to ascertain whether their character as a whole is directed to" an abstract idea. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see Alice*, 573 U.S. at 217. If the claims are not directed to an abstract idea, the inquiry ends; if the claims are "directed to" an abstract idea, we proceed to the second step. *Alice*, 573 U.S. at 217 In step two, we consider whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application," i.e., whether "the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (internal quotations and brackets omitted). Courts may determine patent eligibility under Section 101 on a Rule 12(b)(6) motion if "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software*, 882 F.3d at 1125.

Ubisoft argues that the district court "overgeneralized" the asserted claims as directed to the functionality of teaching guitar, and that "the true focus and claimed advance of the '852 Patent is the specific asserted improvement in computer capabilities." Appellant Br. 12. We disagree.

We often analyze software-related claims by asking whether the claims focus on a "specific asserted

improvement in computer capabilities" instead of on "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Finjan, Inc. v. BlueCoat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). The claims of the '852 patent do not recite a particular way of programing or designing software—they merely claim an abstract process in five steps: (i) "presenting" notations; (ii) "receiving" input; (iii) "assessing" performance; (iv) "determining" weaknesses; and (v) "changing" the difficulty level or "generating" mini-games. '852 patent col. 20 ll. 21–43. The specification describes these steps in functional terms and not by what process or machinery is required to achieve those functions. *See McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016) ("[T]he abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854))). The specification states that "the processes presented herein are not inherently related to any particular computer, processing device, article, or other apparatus." '852 patent col. 2 ll. 22–24; *see also id* at col. 1 ll. 67–2:2 ("The invention may be applied as a standalone game engine system or as a component of an integrated software solution.").

We have also held that claims are "directed to an abstract idea" when they recite "a process of gathering and analyzing information of a specified content, then displaying the results, [without] any particular assertedly inventive technology for performing those functions." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Here, the claims recite nothing more than a process of gathering, analyzing, and displaying certain results. For example, the specification describes the generation of "mini-games" as follows:

> [T]he game engine may assess the user's past performance and provide the user with exercises or games to target the areas that the user needs to

work on in step 1303, and the game engine may then appropriately determine or form a section of mini-games to be played in step 1304.

'852 patent col. 10 ll.1–13. The mini-game generation step is thus no different from the ordinary mental processes of a guitar instructor teaching a student how to play the guitar. *Elec. Power*, 830 F.3d at 1355.

We also agree with the district court that the claims lack an inventive concept under step two of the *Alice* inquiry. If a claim's only "inventive concept" is the application of an abstract idea using conventional and well-understood techniques—e.g., a generic computer—the claim has not been transformed into a patent-eligible application of an abstract idea. *Alice*, 573 U.S. at 223-24; *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed Cir. 2019).

Ubisoft asserts that the district court was required to accept as true Ubisoft's factual allegation that the claimed invention is "an improvement over the prior art." Appellant Br. 29. We disagree. Nothing in the claims or the specification of the '852 patent discloses a technological improvement over conventional methods. Rather, the patent itself makes clear that the claimed invention involves merely the application of conventional computer technology to common guitar instruction techniques. This cannot transform the nature of the asserted claims into patent-eligible applications of the abstract idea. *buySAFE*, 765 F.3d at 1355. The district court was not required to accept Ubisoft's unreasoned conclusions and arguments in the absence of specific plausible allegations of supporting facts. *See Turner*, 930 F.3d at 644.

## CONCLUSION

We have considered Ubisoft's other arguments and find them unpersuasive. For the reasons stated above, we

affirm the Board's determination that claims 1–4 and 6 of the '852 patent recite ineligible abstract ideas.

**AFFIRMED**