# United States Court of Appeals for the Federal Circuit

---

**INDACON, INC.,**
*Plaintiff-Appellant*

v.

**FACEBOOK, INC.,**
*Defendant-Appellee*

---

2015-1129

---

Appeal from the United States District Court for the Western District of Texas in No. 5:10-cv-00966-OLG, Judge Orlando L. Garcia.

---

Decided: June 6, 2016

---

PRATIK A. SHAH, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by ZE-WEN JULIUS CHEN, EMILY CURTIS JOHNSON, JAMES EDWARD TYSSE.

THOMAS G. HUNGAR, Gibson, Dunn & Crutcher LLP, Washington, DC, argued for defendant-appellee. Also represented by BLAIR A. SILVER, LUCAS C. TOWNSEND; HEIDI LYN KEEFE, MARK R. WEINSTEIN, Cooley LLP, Palo Alto, CA; MICHAEL GRAHAM RHODES, San Francisco, CA.

---

Before NEWMAN, REYNA, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Following the district court's claim construction order, Indacon, Inc. and Facebook, Inc. stipulated to noninfringement, and the district court entered final judgment in favor of Facebook. Indacon appeals, disputing the district court's construction of several claim terms. Because the district court correctly construed the claim terms "alias," "custom link," "custom linking relationship," and "link term," we affirm.

BACKGROUND

Indacon owns U.S. Patent No. 6,834,276, which is directed to a system and method for searching, indexing, perusing, and manipulating files in a database, particularly through the insertion of automatically generated hyperlinks. '276 patent col. 3 ll. 50–54, col. 4 ll. 56–58, col. 5 ll. 34–47. Exemplary claim 1 recites:

1. A data acquisition and perusal system, comprising:

a database selection module that enables selection of a plurality of files for inclusion into at least one selectable database;

a link module that enables *custom links* to be defined between selected terms of selected files of the at least one database;

wherein the link module enables association of any *link term* with any of the plurality of files in the at least one selectable database; and

wherein the link module enables at least one *alias term* to be defined for the any *link term* to enable a link to be established between the at least one *alias term* and the any of the plurality of files;

a database index generator module that enables generation of a searchable index of the data contained in the at least one selectable database, including the *custom links*, the generator module enabling only valid *custom links* to be added to the searchable index; and

a search module that enables a search of the searchable index to be performed according to a search criterions.

*Id.* col. 34 l. 56 – col. 35 l. 9 (emphases added).

Indacon filed a patent infringement suit against Facebook, alleging that the software architecture for Facebook's social network infringes claims 1–4 and 8–11 of the '276 patent. The district court construed several claim terms in the '276 patent. Following claim construction, the parties stipulated to noninfringement, and the district court entered final judgment in Facebook's favor. On appeal, Indacon disputes the district court's construction of four claim terms: "alias," "custom link," "custom linking relationship," and "link term." We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

"The ultimate construction of the claim is a legal question and, therefore, is reviewed de novo." *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1265 (Fed. Cir. 2015). While subsidiary factual findings regarding extrinsic evidence are reviewed for clear error, we review claim construction based solely upon intrinsic evidence de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). Because the district court considered only intrinsic evidence in construing the disputed claim terms, our review here is de novo.

"[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The prosecution history of a patent is also part of the intrinsic evidence and "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution." *Id.* at 1317.

## I. Alias

Several of the claims require a link to be established between an "alias" or "alias term" and a plurality of files. The district court construed the claim term "alias" as a "*textual expression* that the user can define to serve as an alternative name or label." *Indacon, Inc. v. Facebook, Inc.* (*Claim Constr. Order*), No. 5:10-cv-966-OLG, Dkt. No. 111, at 22 (W.D. Tex. Sept. 6, 2013) (emphasis added). Indacon acknowledges that "alias" and "alias term" are used interchangeably in the '276 patent. Indacon argues that this term encompasses a "textual or graphical hyperlink," and not just "textual expression." Appellant Br. 19. Thus, Indacon essentially raises two disputes with the district court's construction: (1) whether "alias" encompasses graphical expression as well as textual expression, and (2) whether an "alias" is a hyperlink.

We agree with the district court that "alias" and "alias term" are limited to textual expression. The district court first construed "term" as "textual expression, such as words," finding an express definition of "term" in the specification as "words, numbers, spaces, etc." *Claim Constr. Order* at 17–18 (citing '276 patent col. 12 l. 55). Then, finding that the specification described an alias as a term, the district court looked to this construction of "term" to determine that "alias" is similarly limited to textual expression.

Indacon argues that the district court erred by basing its construction of "alias" on its construction of "term." Indacon has not appealed the district court's construction of "term," but instead argues that "alias" is not dependent on the meaning of "term." We agree with the district court's approach and conclusion regarding the construction of "alias." The '276 patent defines "term" by referring to forms of textual expression ("words, numbers, spaces, etc."). *See id.* As the district court explained, the use of "etc." in this definition implies additional, but similar forms of expression and does not reasonably encompass graphical expression. Indacon also recognizes that exemplary claim 1 is not directed to just an "alias," but actually requires an "alias term." Thus, Indacon's argument that the construction of "term" is irrelevant to the construction of "alias" is unconvincing.

Further, nothing in the specification suggests that "alias" encompasses graphical expression. Instead, the specification consistently describes an alias as a term, which, as explained above, is limited to textual expression. The "Summary of the Invention" introduces the concept of an "alias," explaining: "The link module may further enable at least one *alias term* to be defined for any selected link term to enable a link to be established between each *alias term* and any of the files in the database." '276 patent col. 5 ll. 64–67 (emphases added). Similarly, all examples of an "alias" in the specification consist of textual expression. *See id.* col. 11 ll. 34–36 ("For example, the user may define the *terms* 'grape', 'tomato', 'raspberry', etc., as *aliases* of a link *term* 'vine fruit'.") (emphases added); *id.* col. 24 ll. 46–48 ("For example, a user may want to use *aliases or synonyms* so that 'equine' is also linked when 'horse' is the primary pattern.") (emphasis added). The prosecution history also fails to support an interpretation of an "alias" encompassing graphical expression.

Indacon uses the specification's reference to file formats that may contain graphical elements as support for its view that an "alias" can be graphical. *See, e.g., id.* col. 10 ll. 15–17, col. 22 l. 59 (referencing HTML and RTF files). But nothing in the specification ties these file types, or their potentially graphical elements, to an "alias." To the contrary, with respect to RTF files, the specification teaches "discard[ing] all image byte sequences without affecting the absolute position determination of visible characters in words." *Id.* col. 22 ll. 63–65. We find no support in the intrinsic evidence for Indacon's assertion that the claimed alias can be graphical.

We also agree with the district court that an "alias" is not a hyperlink, contrary to Indacon's assertions. The specification explains that "[t]he link module may further enable at least one alias term to be defined for any selected link term to enable a link to be established between each alias term and any of the files in the database." *Id.* col. 5 ll. 64–67. As such, a link can be established to connect an "alias" or other link term to files in the database, but the alias is not itself the link. Thus, we adopt the district court's construction of "alias" as a "textual expression that the user can define to serve as an alternative name or label."

## II. Custom Link, Custom Linking Relationship, and Link Term

The district court construed "custom link" as "a link the user can define using a chosen term that *allows each instance* of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files"; "custom linking relationship" as "a linking relationship the user can define using a chosen term that *allows each instance* of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files"; and "link term" as

"a term chosen by a user that can be displayed as a link to a file specified by the user *whenever the user encounters the term* in the plurality of files." *Claim Constr. Order* at 26–27 (emphases added). Indacon raises a single issue with respect to the constructions of "custom link," "custom linking relationship," and "link term" (collectively, "the link claim terms"), and does not make any distinct arguments for these individual claim terms.

Specifically, Indacon objects to the district court's constructions of the link claim terms to the extent they exclude creation of a link for less than all instances of a defined term, disputing the district court's construction that allows *each instance* of the defined term to be identified and displayed as a link. We disagree and adopt the district court's constructions of the link claim terms as being limited to *allowing each instance* of a link term to be identified and displayed as a link.

Facebook argues that the link claim terms have no accepted meaning in the art. We agree with Facebook that these terms have no plain or established meaning to one of ordinary skill in the art. As such, they ordinarily cannot be construed broader than the disclosure in the specification. *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004) ("[A]bsent such an accepted meaning [in the art], we construe a claim term only as broadly as provided for by the patent itself."). The specification explains that "[t]he link module enables association of *any* selected link term with any of the plurality of files in the selectable database." '276 patent col. 5 ll. 62–64 (emphasis added). The specification repeatedly demonstrates that all link terms are capable of being identified and displayed as a link. *See, e.g., id.* col. 11 ll. 29–32 ("[W]*hen a link term is encountered* in a file or document, the link term *is indicated or otherwise highlighted* so that the user can select the indicated link term to jump to the linked file.") (emphases added); *id.* col. 30 ll. 22–26 ("A user can instruct the database index

generator to insert custom links by entering a custom link word in a New Custom Link Word edit box and then entering a path and name of a file or document *to which all such words* should link in the File to Link To edit box.") (emphasis added); *id.* col. 30 ll. 34–37 ("[*W*]*henever a user encounters* the custom link word in *any document* displayed in the document view window, except the corresponding file to link to file, *it is set off* from surrounding text.") (emphases added). Thus, we agree with the district court that, consistent with the teachings of the specification, the link claim terms are properly construed as *allowing each instance* of a defined term to be identified and displayed as a link.

The prosecution history provides additional support for the district court's constructions of the link claim terms. In distinguishing prior art, the patentees stated:

> Applicants' invention provides a user with a linking control panel in which the user can designate a specific file to be *linked with every instance* of a specified word (and any associated alias terms) in the database. After the index is generated, the program *displays every instance* of that custom term (and its alias terms, if any) as a hyperlink to the designated file. . . . These innovations distinguish Applicants' invention from [the prior art].

Joint Appendix ("J.A.") 1182–83 (emphases added). The patentees then summarized the differences between "Applicants' Invention" and the prior art, explaining that their invention "[e]nables user[s] to associate *all instances* of a specified word with a specific file." J.A. 1186 (emphasis added).

Facebook argues that these statements in the prosecution history, consistent with the specification, provide further evidence that the patentees understood the invention as limited to allowing each instance of a defined term to be identified and displayed as a link. But, to the extent

these claim terms might otherwise have a broader meaning in the art, Facebook argues in the alternative that the prosecution history evidences a clear and unmistakable disclaimer of claim scope. We agree that the patentees' description of their invention during prosecution as allowing *every instance* or *all instances* of designated terms to be linked to a file bolsters the district court's constructions. Because the link claim terms lack a plain or ordinary meaning in the art, and because the specification suggests limiting the scope of these claim terms to allowing each instance of a defined term to be identified and displayed as a link, we need not determine whether the patentees' statements during prosecution rise to the level of clear and unmistakable disclaimer.

In response, Indacon argues that because the references to "every instance" in the prosecution history were not the "critical contrast that applicants were trying to make over the cited reference," these statements cannot form the basis for disavowal. Appellant Reply Br. 12 (citation and internal quotation marks omitted). As explained above, we need not find disclaimer where the specification does not permit a broader interpretation of these claim terms and the terms otherwise lack an ordinary meaning in the art. Moreover, "the interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner relied on them, or how much weight they were given." *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1325 (Fed. Cir. 2015). Here, the patentees repeatedly described their invention both in the specification and the prosecution history as allowing "every instance" or "all instances" of a defined term to be identified and displayed as a link. J.A. 1182–83, 1186. Under these circumstances, the district court did not err in limiting the link claim terms as such.

Finally, Indacon argues that claim differentiation precludes the district court's constructions of the link claim

terms because certain claims recite linking *instances* while other claims recite linking *all instances* of the link terms. Specifically, Indacon points, on the one hand, to claims 2 and 9, which recite "wherein the link module is operable to link *instances* of the one or more text strings in the selected files" (claim 2) and "wherein the step of defining the linking relationships includes . . . linking *instances* of the one or more text strings in the selected files" (claim 9). '276 patent col. 35 ll. 20–21, col. 37 ll. 29–32 (emphases added). In contrast, Indacon points to claims 14 and 15, which both recite "automatically generating links between *all instances* of the link term within the plurality of selected source files and the designated file." *Id.* col. 38 ll. 65–67, col. 40 ll. 1–3 (emphasis added). Importantly, however, all of claims 2, 9, 14, and 15 are independent claims, and we have declined to apply the doctrine of claim differentiation where, as here, the claims are not otherwise identical in scope. *See World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1125–26 (Fed. Cir. 2014); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007). Further, "[a]lthough claim differentiation is a useful analytic tool, it cannot enlarge the meaning of a claim beyond that which is supported by the patent documents, or relieve any claim of limitations imposed by the prosecution history." *Fenner*, 778 F.3d at 1327.

Thus, we adopt the district court's constructions of the link claim terms. "Custom link" is properly construed as "a link the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original database files"; "custom linking relationship" is properly construed as "a linking relationship the user can define using a chosen term that allows each instance of the term in the plurality of files to be identified and displayed as a link to a file chosen by the user, without modifying the original data-

base files"; and "link term" is properly construed as "a term chosen by a user that can be displayed as a link to a file specified by the user whenever the user encounters the term in the plurality of files."

## CONCLUSION

We find no error in the district court's constructions of "alias," "custom link," "custom linking relationship," and "link term." As such, we affirm the judgment of noninfringement.

**AFFIRMED**